

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **DRUE FERGUSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 07 C 4694 |
| v. ) | |
| ) | Judge Ruben Castillo |
| **R. JAMES NICHOLSON,** ) | |
| Secretary, United States Department of ) | |
| Veterans Affairs, ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION AND ORDER

Drue Ferguson ("Plaintiff") brings this action to address alleged unlawful employment practices by the Secretary of the United States Department of Veterans Affairs, Eric Shinseki[1] ("Defendant"), in his official capacity. Plaintiff alleges race, gender and retaliatory discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (R. 1, Compl.) Presently before the Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). (R. 40, Def.'s Mot for Summ. J ("Def.'s Mot.").) For the reasons stated below, the motion for summary judgment is denied.

---

[1] Pursuant to Fed. R. Civ. P. 25(d), the current Secretary of the Department of Veterans Affairs, Eric Shinseki, has automatically replaced former Secretary R. James Nicholson as Defendant. *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 541 U.S. 913, 917 (2004) ("[F]ederal law provides for *automatic substitution* of the new officer when the originally named officer has been replaced.").

1

## RELEVANT FACTS[2]

Plaintiff is an African American male. (R. 47, Pl.'s Facts ¶ 2.) He works as a Lead Dialysis Technologist with the Department of Veterans Affairs at the Hines Medical Center (the "V.A."), his employer since 1999.[3] (R. 42, Def.'s Facts ¶ 2.) His supervisor is Nurse Manager Mary Reed ("Reed"). (*Id.*) In 2003, Plaintiff testified as a witness in an Equal Employment Opportunity ("EEO") case brought by coworker Bette Flemings ("Flemings"), who alleged disability discrimination against the V.A. (*Id.* ¶ 3.) On December 4, 2003, Plaintiff contacted an EEO Counselor to initiate his own complaint for reprisal based on his prior EEO testimony. (*Id.* ¶ 4.) In the complaint, Plaintiff alleged that his duties had been reassigned and that he had been denied the right to perform the duties of his job description. (*Id.*) In January 2004, however, Plaintiff withdrew his complaint deciding not to pursue his claim through the EEO. (*Id.* ¶ 6.)

In February 2005, the V.A.'s Human Resources Department ("HR") updated the dialysis technician position description to purportedly reflect the current practices and technologies of the position. (R. 42, Def.'s Facts ¶ 8.) Plaintiff did not think that the revised position description

---

[2] The Court takes the undisputed facts from the parties' Local Rule 56.1 Statements. (R. 42, Def.'s Local Rule 56.1 Statement of Material Facts ("Def.'s Facts"); R. 47, Pl.'s Local Rule 56.1 Statement of Material Facts ("Pl.'s Facts").) The party opposing summary judgment "must" respond with "both" a response to each numbered paragraph "and a separate statement consisting of short numbered paragraphs[] of any additional facts that require the denial of summary judgment." *Ciomber v. Coop. Plus*, 527 F.3d 635, 643-44 (7th Cir. 2008); *see also* LR 56.1(3)(C). The Court is entitled to strict compliance with Rule 56.1. *Ciomber*, 527 F.3d at 643. Here, Plaintiff did not fully comply with Rule 56.1. (*See* R. 47, Pl.'s Facts.) He filed a response to each paragraph of Defendant's summary judgment motion but failed to include a statement of any additional facts that require the denial of summary judgment. (*See id.*) Accordingly, this Court must analyze the motion based on the facts presented.

[3] Plaintiff was promoted to his current position as Lead Dialysis Technologist in 2001. (R. 1, Compl. ¶ 19.)

was "valid" and on May 3, 2005, he filed an EEO complaint challenging the description (R. 47, Pl.'s Facts ¶ 24; R. 42, Def.'s Facts Ex. A at 131.) In reference to his EEO complaint, Reed stated, "[h]e took me to court because he did not acknowledge his position description." (Id. ¶ 7.) About a year after the complaint was filed, on May 22, 2006, the EEOC entered a decision in favor of the V.A. regarding Plaintiff's challenge. (Id. ¶ 45.)

Plaintiff's attendance record for the period of January 1, 2005, through March 31, 2005, indicates that he used 10.75 hours of Annual Leave, 28 hours of Sick Leave and 13 hours of Leave Without Pay ("LWOP").[4] (Id. ¶ 13.) On June 2, 2005, Plaintiff was issued a "Sick Leave Restriction Notice Warning" letter from Reed purportedly because of his "pattern of excessive sick leave usage." (Id. ¶ 10.) The warning informed Plaintiff that his sick leave would be monitored and if he did not show improvement in the next three months, any leave would be recorded as Absence Without Leave ("AWOL") until it could be verified with an accepted doctor's note. (Id. ¶ 10.) The letter indicates that Plaintiff refused to sign it. (Id., Ex. A at 187.) Plaintiff "denies ever seeing or being advised of such a warning prior to his filing the EEO complaint." (R. 47, Pl.'s Facts ¶ 11.)

On November 12, 2005, the V.A.'s computer system went down and Reed ordered the employees to document patient care via paper entries and to input the information electronically once the computers were operable. (Id. ¶ 15.) On November 14, 2005, when she had not received any documentation from Plaintiff, Reed alleges that she reminded him to follow the protocol for the system outage. (Id. ¶ 16.) On November 18, 2005, Reed issued a letter of inquiry to Plaintiff requesting an explanation as to why he had not submitted any paper

---

[4] Requests for sick leave are recorded as LWOP when an employee has no more sick days left to use. (Id. ¶ 12.)

documentation for his patients from November 12. (*Id.* ¶ 17.) On December 16, 2005, when Plaintiff had yet to update the computer system for a particular patient, Reed issued Plaintiff a letter of admonishment. (*Id.* ¶ 36.) Reed claims to have issued four to ten similar admonishments to other employees for failing to document patient information in the computer. (*Id.* ¶ 46.) Plaintiff claims that the patient referenced in the admonishment was not a dialysis patient, had not been in the clinic for years and he did not provide treatment for this patient on November 12. (*Id.* ¶ 37.)

On November 21, 2005, Reed posted a note containing Plaintiff's leave balance and social security number in a work schedule binder. (*Id.* ¶ 18; R. 47, Pl.'s Facts ¶ 18.) Reed alleges that she left the information for the charge nurse because she was accepting sick leave requests from Plaintiff when he had no sick leave left in his leave bank. (R. 42, Def.'s Facts ¶ 18.) Reed claims that she had done the same thing with other employees. (*Id.*) Plaintiff disputes that he made sick leave requests to any charge nurses. (R. 47, Pl.'s Facts ¶ 18.) Further, Plaintiff alleges that no other person had such information posted in the work schedule binder. (R. 42, Def.'s Facts ¶ 20.) According to V.A. policy, employees cannot request sick leave from a charge nurse, rather all leave must be granted by a supervisor or clinical care coordinator. (*Id.* ¶ 19.) After he saw the information posted in the binder, Plaintiff contacted the EEO and complained of reprisal based on Reed "falsely accusing him of failing to make entries into the computerized medical records for treatment" and posting his confidential information in a binder where everyone could see it. (*Id.* ¶ 21.) After Plaintiff's complaint, Reed removed the information from the binder, she claims that Plaintiff was "sensitive" about "having his zero leave balance

4

made known to other employees."[5] (*Id.* ¶ 22.)

In late November through early December, Plaintiff was charged as AWOL or LWOP for several days. (*Id.* ¶ 22.) During this period, Plaintiff alleges that he suffered a cardiac incident from which he was hospitalized on November 21, 2005. (*Id.* ¶¶ 26, 32; R. 47, Pl.'s Facts ¶ 26.) On November 28, 2005, Reed met with Plaintiff to discuss his position description for the period of October 1, 2005, through September 30, 2006. (R. 42, Def.'s Facts ¶ 24; Ex. A at 194-96.) Plaintiff, however, refused to sign and accept a copy of the description. (*Id.* ¶ 24; R. 47, Pl.'s Facts ¶ 24.) Plaintiff alleges that during their meeting Reed "denied" his request for a copy of his performance appraisal for the period ending October 31, 2005. (*Id.*; R. 42, Def.'s Facts ¶ 7.) That same day, Plaintiff was issued another "Sick Leave Restriction Notice Warning" based on his attendance from August 1, 2005, through October 28, 2005.[6] (*Id.* ¶ 25; Ex. A. at 189.) Again, Plaintiff refused to sign the warning. (*Id.* ¶ 25.) Plaintiff claims that he was often working when Reed would mark him tardy or LWOP. (*Id.* ¶ 28; R. 47, Pl.'s Facts ¶ 28.)

On December 7, 2005, Plaintiff was interviewed about the aforementioned incidents by an EEO counselor. (R. 42, Def.'s Facts ¶ 31.) On December 13, 2005, fellow technician, Eric Pagulayan ("Pagulayan") sent a memo to the EEO describing an incident when he, Plaintiff and another employee all arrived at the same time, but Plaintiff was the only one marked tardy. (*Id.* ¶ 34.) On December 21, 2005, Plaintiff was notified of his right to file a formal EEO complaint.

---

[5] Further, Reed claims the binder contained sign-in sheets with the names and social security numbers of other employees. (*Id.* ¶ 22.) Plaintiff, however, disputes this assertion. (R. 47, Pl.'s Facts ¶ 22.)

[6] During that period, Plaintiff's attendance report indicates that he used 4.25 hours of Annual Leave, 24 hours of Sick Leave and 16 hours of LWOP. (*Id.*)

5

(*Id.* ¶ 38.) He subsequently filed a formal EEO complaint on January 9, 2006, alleging reprisal based on the following incidents: (1) admonishment for failure to input data on a patient that he had never treated; (2) publishing confidential information including his leave balance and social security number for everyone to see; (3) improper placement on sick leave restriction; (4) denial of a copy of his performance evaluation; and (5) falsely being charged with tardiness. (*Id.* ¶ 39; R. 47, Pl.'s Facts ¶ 39.) As remedies, Plaintiff sought an end to the reprisal, recision of the admonishment, reimbursement for lost wages, removal of the leave restriction and a reprimand of Reed. (*Id.*)

On April 30, 2006, Plaintiff was notified that his sick leave restriction had been extended. (R. 42, Def.'s Facts ¶ 43.) Later, in July 2006, Plaintiff alleges that although he was entitled to vacation priority pursuant to a union agreement, Reed gave away his vacation selection to another less senior unit employee. (*Id.* ¶¶ 49, 51; R. 47, Pl.'s Facts ¶¶ 50, 51.) On September 19, 2006, Plaintiff was allowed to amend his EEO complaint to add this incident to his other claims of retaliation. (R. 42, Def.'s Facts ¶ 61.)

On August 9, 2006, fellow technicians Rhonda Townsend ("Townsend") and Pagulayan provided sworn EEO deposition testimony. (R. 42, Def.'s Facts ¶¶ 52, 54.) Both testified that Reed would only mark Plaintiff tardy when other employees would also come in late.[7] (*Id.*) Further, Townsend testified that employees were supposed to have a eight-minute grace period, but Reed marked Plaintiff tardy even if he was less than eight minutes late. (*Id.*) On August 17,

---

[7] Reed claims that Townsend had prearranged to come to work late because she was taking a class and that Pagulayan had previous permission for coming to work late due to a babysitting problem. (R. 42, Def.'s Facts ¶¶ 53, 55.) Plaintiff, however, claims that these arrangements are not applicable because his allegations relate to days when they were all supposed to be at work on time. (*Id.*, Ex. A at 83.)

6

2006, nurses Medcel Balteo ("Balteo"), Perla Milan ("Milan") and Alice Dommen ("Dommen") also gave sworn EEO deposition testimony. (*Id.* ¶¶ 57, 58, 59.) All of the nurses testified that they saw Plaintiff's leave information in the public binder but had never seen any other employees' information in the binder. (*Id.* ¶¶ 57, 58, 59; Ex. A at 116-23.) Further, both Balteo and Milan testified that when several employees would come in late, Reed only marked Plaintiff as being tardy. (*Id.* ¶¶ 57, 58.) Balteo even went as far as saying that Reed "targeted" Plaintiff. (*Id.* ¶ 57; Ex. A at 116.)

On May 17, 2007, the V.A. issued its Final Agency Decision ("FAD"), concluding that Plaintiff "failed to establish by a preponderance of the evidence" that he was subjected to discrimination based on reprisal. (*Id.* ¶ 67; Ex. B at 11.) On September 4, 2007, the EEOC affirmed the V.A.'s FAD. (*Id.* ¶ 69; Ex. C.)

## PROCEDURAL HISTORY

On August 20, 2007, Plaintiff filed a three-count complaint against Defendant in this Court alleging race, gender and retaliatory discrimination. (R. 1, Compl. ¶¶ 37-61.) On January 23, 2008, this Court granted Plaintiff's motion for default judgment following Defendant's failure to appear and subsequently granted Plaintiff's petition for attorney fees and costs. (R. 13, Minute Entry; R. 20 Minute Entry.) On March 4, 2008, Defendant moved to set aside the default and award of fees and costs. (R. 23, Def.'s Mot. to Set Aside Default.) The motion was fully briefed and after a careful review of all relevant pleadings, this Court granted Defendant's motion on October 3, 2008. (R. 31, Minute Entry.)

On March 31, 2009, Defendant moved for summary judgment, asserting that Plaintiff failed to exhaust his administrative remedies for his race and gender discrimination claims and

7

that he cannot establish a case of retaliatory discrimination under Title VII. (R. 40, Def.'s Mot. for Summ. J. ("Def.'s Mot.").)

## LEGAL STANDARDS

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A disputed fact is 'material' if it might affect the outcome of the suit under the governing law." *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In ruling on a motion for summary judgment, the Court must consider the facts in the light most favorable to the non-moving party, drawing all reasonable inferences and resolving all doubts in the non-moving party's favor. *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). Once a moving party has met this burden, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement. The non-moving party must show that there is evidence upon which a jury reasonably could find for the plaintiff." *Wheeler*, 539 F.3d at 634.

## ANALYSIS

### I. Race and Gender Discrimination Claims

As an initial matter, Plaintiff withdraws Counts I and II, his Title VII allegations of race and gender discrimination. (R. 45, Pl.'s Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mem.") at 4.) Plaintiff admits that he failed to allege discrimination on the basis of race or gender in his EEO

8

complaint. (*Id.*) As such, Plaintiff did not exhaust his administrative remedies and his claims are procedurally barred. *See Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) ("[P]laintiffs who have not exhausted their administrative remedies have prematurely brought their claims into the courts."); *Doe v. Oberweis*, 456 F.3d 704, 712 (7th Cir. 2006) ("[E]xhaustion of administrative remedies is required when the Title VII plaintiff is a federal employee."). Accordingly, this Court will only consider Plaintiff's retaliatory discrimination claim.

## II. Retaliatory Discrimination Claim

Plaintiff alleges that as a direct and proximate result of his EEO testimony and activity, he was retaliated against and subjected to a hostile work environment in violation of Title VII. (R. 1, Compl. ¶¶ 49-52, 56.) Title VII makes it unlawful for an employer to retaliate against any employee because the employee has "testified, assisted, or participated in any manner in an investigation, proceeding or hearing." 42 U.S.C. §2000e-3a. The range of conduct prohibited under Title VII's anti-retaliation provision is broader than Title VII's anti-discrimination provision because the anti-retaliation provision "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Sante Fe Ry. v. White*, 548 U.S. 53, 64 (2006); *see also Henry v. Milwaukee County*, 539 F.3d 573, 586 (7th Cir. 2008).

A plaintiff may establish retaliatory discrimination using either the direct or indirect methods of proof. *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008); *Metzger v. Ill. State Police*, 519 F.3d 677, 681 (7th Cir. 2008). Under the direct method of proof, a plaintiff must establish through direct or circumstantial evidence that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action by his employer; and (3) a causal connection exists between the two. *Id.*; *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

9

Under the indirect method, a plaintiff must first establish a *prima facie* case of retaliation. *Id.* at 787. The first two elements are the same as the direct method, but instead of establishing a direct causal link, the plaintiff "must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Id.* at 786-87. If the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to offer a nondiscriminatory motive for its action. *Id.* at 787. If the defendant meets his burden, the burden shifts back to the plaintiff to show that the employer's proffered reasons are pretext for retaliation. *Id.*

In this case, Plaintiff was clearly involved in statutorily protected activity. *See Lewis v. City of Chicago*, 496 F.3d 645, 655 (7th Cir. 2007) (employee engaged in protected activity when she made complaints to supervisors, the union, and EEOC about alleged discrimination). Plaintiff provided EEO testimony on behalf of a coworker and submitted his own EEO complaint alleging retaliation. (R. 42, Def.'s Facts ¶¶ 3, 4.) Therefore, there is no dispute that the first element is satisfied and the Court will proceed to determine if Plaintiff has satisfied the other elements necessary for a claim of retaliatory discrimination.

### A. Adverse Action

The second element common to both the direct and indirect methods of proof is a materially adverse action by the employer.[8] *Stephens*, 569 F.3d at 786. "[N]ot everything that makes an employee unhappy is an actionable adverse action." *Atanus v. Perry*, 530 F.3d 662, 678

---

[8] Under the direct method, Plaintiff must show that the adverse action was a "result of the protected activity," while under the indirect method, "he must show that he and no one else who did not complain, suffered the adverse action." *Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007).

(7th Cir. 2008.) "[T]he challenged action must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis*, 496 F.3d at 655 (citations omitted) (reversing summary judgment on retaliation claim, concluding that singling out an employee for more dangerous assignments after complaining was materially adverse); *see also Minor v. Centocor, Inc.*, 457 F.3d 632, 634 (7th Cir. 2006) (affirming summary judgment, determining that increasing workload without additional pay was essentially a pay reduction and materially adverse). Although this is a "context-driven inquiry," "petty slights, minor annoyances, and simple lack of good manners" are normally not sufficient to deter a reasonable person. *Lucero v. Nettle Creek Sch. Corp.*, 566 F.3d 720, 729 (7th Cir. 2009) (citations omitted); *Pantoja*, 495 F.3d at 849.

Plaintiff claims that after he engaged in protected activity, he "was subjected to continuous acts of reprisal." (R. 1, Compl ¶¶ 33-34.) Specifically, Plaintiff alleges that his job description was "downgraded" "to reflect [a] loss of supervisory status." (*Id.* ¶ 22.) In addition, Plaintiff claims that he "had no prior reprimands, write-ups, tardies or attendance issues" until he gave EEO testimony on Flemings' behalf. (*Id.* ¶ 20.) After his testimony and EEO activity, Plaintiff alleges that he was charged with and placed on LWOP for tardiness, "marked for attendance issues," and improperly marked AWOL. (*Id.* ¶¶ 24-25, 31.) Further, Plaintiff alleges that he had his confidential information "made public for all to see," was placed on sick leave restriction without warning, had his annual vacation request denied, and was falsely admonished for not entering patient treatment information into the computer system. (*Id.* ¶¶ 26-27, 29, 32.) Defendant, however, argues that each of these events "fall short of a materially adverse action." (R. 41, Def.'s Mem. at 7.)

11

The Court finds that Plaintiff's allegation that he was placed on sick leave restriction without warning is belied by the record. The record reflects that Plaintiff was issued "Sick Leave Restriction Notice Warning" letters on June 2, 2005, and November 28, 2005. (R. 42, Def.'s Facts, Ex. A at 187, 189.) Both warnings contain notations that Plaintiff refused to sign the letters the day that they were issued. (*Id.*) However, Plaintiff's refusal to sign the warnings because he believed the "restriction was improperly entered," does not negate the fact that he received a warning. (*See id.* ¶ 11.)

Plaintiff does not dispute that he "refused" to sign the warning letters on June 2 and November 28, nor does he refute the accuracy of the time and attendance records upon which the warnings were based. (*See* R. 47, Pl.'s Facts ¶¶ 10, 13, 25, 27.) Further, Plaintiff admits that he had a conversation with Reed about sick leave restriction on November 28. (*Id.* ¶ 26; R. 42, Def.'s Facts ¶ 26.) Plaintiff, however, "denies ever seeing or being advised of" the June 2 warning "prior to his filing the EEO complaint." (R. 47, Pl.'s Facts ¶ 11.) Even if the Court accepts Plaintiff's allegation that he was not warned about his sick leave restriction on June 2, the Court finds that this singular incident would not "dissuade" someone from engaging in the protected activity and therefore is not actionable. *See Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 462 (7th Cir. 2007) (concluding that based on the context, the particular disciplinary actions were not adverse).

The record also indicates that Plaintiff was not "denied" his vacation request. Under the union policy, due to his seniority, Plaintiff was entitled to his first choice vacation selection. (R. 42, Def.'s Facts ¶ 49.) Plaintiff, however, made two vacation selections; when he refused to identify which of the two was his first choice, Reed simply chose one of the dates. (*Id.* ¶¶ 49, 50.) Accordingly, this event does not qualify as an adverse action to establish retaliatory discrimination.

12

Further, Plaintiff's allegation that his confidential information was posted in a work schedule binder is also not actionable. The Court finds that this incident more appropriately fits into the category of "petty slights or minor annoyances" and does not rise to the level of an adverse action. *Lucero*, 566 F.3d at 729.

Next, Plaintiff argues that after his EEO testimony, his position was "downgraded" and that Defendant "removed some or all of his supervisory functions and changed his role and responsibilities." (R. 1, Compl. ¶¶ 21-22; R. 45, Pl.'s Resp. at 7.) The Seventh Circuit recognizes that "[e]mployment discrimination cases are extremely fact-intensive" and has repeatedly held that the court is not "obliged . . . to scour the record looking for factual disputes." *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2005). The parties must support all disputed facts with specific references to parts of the record in order to withstand summary judgment. *Id.* Here, Plaintiff did not include a statement of any additional facts that require the denial of summary judgment. (*See* R. 47, Pl.'s Facts.) He merely attaches what appears to be copies of position descriptions from 1996, 2000 and 2005 without explanation. (*See id.*, Ex. 1.) Plaintiff simply asserts that changes in his position constitute "an adverse employment action." (*See* R. 45, Pl.'s Resp. at 7.) This conclusory statement is insufficient to withstand summary judgment. *Cracco*, 559 F.3d at 632; *see also Gonzales v. Leavitt*, No. 06C3519, 2007 U.S. Dist. LEXIS 90132, *19-20 (N.D. Ill. Dec. 5, 2007) (finding no adverse action where plaintiff simply offered conclusory statements and did not provide clear examples of employer's alleged adverse action). As such, Plaintiff has not met his burden of putting forth facts to show that his position was "downgraded," in order to illustrate an adverse action.

Finally, Plaintiff argues that the admonishment and his time and attendance issues

13

constitute adverse actions. (R. 45, Pl.'s Resp. at 8.) Defendant argues that the admonishment is not actionable because it was only to be placed in Plaintiff's personnel file "for a period of six months to two years." (R. 41, Def.'s Mem. at 8.) In addition, Defendant argues that Plaintiff cannot show that the admonishment "affected his compensation or reduced his career prospects or harmed him in any material way." (*Id.*) Such a showing, however, is not required. Plaintiff need only show that the admonishment would probably dissuade a reasonable employee from making or supporting a claim of discrimination. *See Lewis*, 496 F.3d at 655. In *Pantoja*, the plaintiff contested disciplinary warnings which were entered into his file for allegedly failing to properly perform job functions. *Pantoja*, 495 F.3d at 844. The Seventh Circuit reversed a summary judgment entered in favor of the employer, concluding that the warnings were sufficient for a fact finder to conclude that they were materially adverse. *Id.* at 849. Similarly, the Court finds that a fact finder could conclude that the admonishment in this case was materially adverse. Further, in a light most favorable to Plaintiff, allegations that he was improperly marked for attendance issues and with LWOL could also dissuade a reasonable employee from making or supporting a claim of discrimination. Therefore, Plaintiff has established the second element of both the direct and indirect methods of proof.

### B. Causation

Next, under the direct method of proof, Plaintiff must show a causal link between his EEO activity and Defendant's actions. *Gates*, 513 F.3d at 686. A causal link exists between protected activity and adverse employment action when the plaintiff shows that "the protected conduct was a substantial or motivating factor in the employer's decision." *Id.* "'[T]he mere fact that one event preceded another does nothing to prove that the first event caused the second; the plaintiff also

must put forth other evidence that reasonably suggests that her protected speech activities were related to her employer's discrimination.'" *Lewis*, 496 F.3d at 655 (quoting *Burks v. Wis. DOT*, 464 F.3d 744, 758 (7th Cir. 2006)). Plaintiff does not directly address the causal connection in his brief, and simply asserts that "approximately 90 days" after he testified in Flemings' EEO proceeding, he began to experience retaliatory treatment. (R. 45, Pl.'s Resp. at 2.) Suspicious timing alone is sufficient to survive summary judgment only in "extreme" cases. *Casna v. City of Loves Park*, 547 F.3d 420, 427 (7th Cir. 2009) (determining that the causal link was sufficient to survive summary judgment where plaintiff's termination was recommended on the same day that she made her statutorily protected complaint). Plaintiff does not present such an "extreme" case, therefore he must establish his retaliation claim through the indirect method of proof.

### C. Pretext

Under the indirect method, Plaintiff "must show that he was performing his job satisfactorily and that he was treated less favorably than a similarly situated employee who did not complain of discrimination." *Stephens*, 569 F.3d at 786-87. In cases such as this where the plaintiff argues that he has performed satisfactorily and the employer is "lying about the business expectations required for the position," the first part of the inquiry essentially "merge[s]" with the pretext question "because the issue is the same - - whether the employer is lying." *Hague v. Thompson Distrib. Co.*, 436 F.3d 816, 823 (7th Cir. 2006). Similarly, when plaintiff produces sufficient evidence to raise an inference that the employer applied its legitimate expectations in a disparate manner, the Court should proceed to the pretext inquiry. *Elkhatib v. Dunkin Donuts, Inc.*, 493 F.3d 827, 831 (7th Cir. 2007).

Here, Plaintiff claims that admonishment was "improper and unjustified" because he had

no obligation to enter treatment data for a patient that he did not treat.[9] (R. 47, Pl.'s Facts ¶¶ 35-36.) Further, Plaintiff alleges and has witness testimony to support his claim that Defendant applied attendance policies in a discriminatory manner. (*Id.* ¶ 28.) Accordingly, the Court focuses on pretext, while keeping in mind that if Plaintiff has not presented sufficient evidence of pretext, then he also did not show he was meeting Defendant's expectations. *Hague*, 436 F.3d at 823.

"Pretext is a 'lie, specifically a phony reason for some action.'" *Fischer v. Avanade, Inc.*, 519 F.3d 393, 403 (7th Cir. 2008) (quotation omitted). To show pretext, the plaintiff must prove through either direct or indirect evidence, that: (1) "the employer's nondiscriminatory reason was dishonest; and (2) the employer's true reason was based on discriminatory intent." *Id.* Plaintiff argues that the reasons proffered for Plaintiff's admonishment and discipline for time and attendance issues are "incredible and suggestive of pretext." (R. 45, Pl's Resp. at 8.)

First, Plaintiff claims that the admonishment would have been permanently placed in his personnel file rather than for a period of six months to two years if the alleged infraction was "critical to the unit's financial and compliance mandates" as Defendant suggests. (*Id.*) In addition, Plaintiff argues that Defendant never produced documentation to prove that Plaintiff actually treated the patient whose information he allegedly failed to enter into the system. (*Id.*) The record indicates that on November 12, 2005, after the V.A. computer system went down, a paper contingency was put into place. (R. 42, Def.'s Facts ¶ 15.) On November 18, 2005, Reed issued Plaintiff a letter of inquiry indicating that no documentation had been posted for the patients that he was assigned on November 12. (*Id.*, Ex. A at 182.) The inquiry requested that Plaintiff provide a

---

[9] Other than assertions by Reed, Defendant has not provided evidence to establish that Plaintiff did in fact treat this particular patient. (*See* R. 42, Def.'s Facts.)

16

written explanation by November 23, 2005, which would be considered to determine if disciplinary action was warranted. (*Id.*) Plaintiff, however, did not respond to the inquiry. (*Id.* at 125.) On December 15, 2005, Reed filled out a report of contact stating the Plaintiff had still not entered patient treatment information for a particular patient, and if the treatment was not properly documented the V.A. would not receive payment. (*Id.* at 181.) Subsequently, the admonishment was issued on December 16, 2005. (*Id.* at 179-80.) Again, Plaintiff claims that the admonishment was "unjustified" because he did not treat this particular patient. (R. 47, Pl.'s Facts ¶¶ 35-36.) The admonishment, however, stated that if Plaintiff believed that the action was "unjustified," he could appeal within 15 days. (R. 42, Def.'s Facts, Ex. A at 179.) Plaintiff provides no evidence that he submitted an appeal. Moreover, at the EEO investigator's instruction, HR reviewed the admonishment and found that all rules and procedures were followed. (*Id.*, Ex. A at 125.) Accordingly, this Court finds that Plaintiff failed to establish pretext; the record illustrates that the admonishment was justified.

As for the time and attendance issues, Defendant argues that Plaintiff "cannot successfully challenge them in light of his statement to the EEO counselor that he had used up all of [sic] sick leave and had to take LWOP for time away from work." (R. 48, Def.'s Reply at 3.) This Court does not agree. Although the record indicates that Plaintiff had run out of sick leave because he was hospitalized twice and had to take additional time off to care for sick family members, these facts do not negate Plaintiff's allegation that he was often in the unit and Reed would still mark him tardy or LWOP. (*See* R. 47, Pl.'s Facts ¶¶ 12, 28; R. 42, Def.'s Facts, Ex. A at 43.)

Several employees, including technicians and nurses that were supervised by Reed, testified that she would only mark Plaintiff tardy when other employees would also come in late and

17

marked him tardy even if he arrived within the eight minute grace period. (R. 42, Def.'s Facts ¶¶ 52, 54, 57-59.) The Court finds that this consistent testimony establishes that Defendant treated similarly situated employees, who did not engage in statutorily protected activity, more favorably than Plaintiff was treated. *See Peirick v. Ind. Univ.-Purdue Univ. Indianapolis Athletic Dep't*, 510 F.3d 681, 688 (7th Cir. 2007) ("this involves showing that the employees shared the same supervisor, performance standards, and 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'").

Defendant claims that Plaintiff "was being monitored because he was on sick leave restriction for quite some time due to his 'erratic attendance,'" and would have been monitored regardless of his protected activity. (*Id.*) This Court, however, finds that this issue presents a factual dispute. *See Pantoja*, 495 F.3d at 851 (determining a disputed issue of fact remains because a trier of fact could believe that the employer did not begin to take issue with plaintiff's offenses until his statutorily protected complaint). A jury could find that Reed was "targeting" Plaintiff and that he was being unfairly monitored (and falsely marked with attendance issues) because of his EEO activity.

## CONCLUSION

Taking the record, as we must at this stage, in the light most favorable to Plaintiff, the Court finds that a trier of fact could infer that he was the victim of retaliation prohibited by Title VII. Accordingly, Defendant's motion for summary judgment (R. 40) is DENIED. However, the scope of Plaintiff's lawsuit - as to both liability and available damages - has been considerably narrowed.

18

The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case. The parties shall appear for a status on December 3, 2009 at 9:45 a.m. to set a firm trial date for this lawsuit.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated: November 16, 2009**